And thank you as well for accepting the appointment. We appreciate it very much. Thanks to the government, of course. All right. Our fourth case for today is Rexing Quality Eggs v. Rembrandt Enterprises. Mr. Johnson. May it please the Court. My name is Jim Johnson. I represent Rexing Quality Eggs. Rexing 2, the subsequent claim, was not split as a claim from Rexing 1. Any overlay of Rexing 2, which I'll refer to as the plastics claim, with Rexing 1, which is the claim concerning the supply agreement, are immaterial to each claim. The law in Indiana on this issue is clear that two claims can arise from the same occurrence. But Indiana has said that they don't take the word identical evidence to a highly literal degree, the more recent Indiana cases. And it seems that the district court, at least, looked at this as just two different ways of resolving the dispute about who owned the eggs cargo system, what damages may have accrued when, whether it should even have been returned to Rexing. If it wasn't, were there any damages? And there are a couple of different ways you can turn that box, and maybe it looks a little different. But it's all actually about the eggs cargo system, its use in this particular contractual arrangement, and does anybody owe money to anybody else. That sounds to me like something that you knew since there had been two demands already before Rexing 1 is filed. You knew about that. You came up with another theory. Your Honor, there's quite a bit in your question, and I'll try to unpack it here, and I'll start with where you ended. Okay. Start with what? Where I ended. Where she ended in the three items that you went through. So, yes, we knew that they had the eggs cargo system or the plastics, for want of a better term. We knew that when Rexing 1 began. However, we- And you had demanded return twice, as I recall. Yes, twice. We were waiting for the return of the cargo system before we made a decision as to whether we were going to file suit on that. We didn't know if Rembrandt intended to return the entire system after the term of the contract ended, and we continued to want Rembrandt to return the system. It was not until after- Now, would you agree that there was nothing in the contract itself that said anything one way or the other about whether Rembrandt had to give it back to you? The contract, I agree that the supply agreement is silent. Section D requires us to provide these materials, and that- They're basically just packing and shipping materials suitable for eggs, right? And it's a cost thing. Basically, if we have to provide these, it's going to cost you more. If you provide them, it's going to cost the eggs a cost less. So, that's the only mention in the contract. And as far as the remedies in the contract, there really isn't a remedy provision. There's a warranty provision, and that only applies to shell eggs. So, as far as how we get these items back, it's silent in the contract. But I believe the only proper inference from the contract is that we supply these, these are our property. And it was not until we got- Not until they returned everything by December of 2018 that we knew items were missing, items were unusable, and it was at that time that we instigated the lawsuit. So, that- I understand that to be kind of descriptive of your strategic process, or descriptive of the way that you litigated it, you know, why you litigated it when you did. But the plastic, or the packaging, was on your mind in a big way in Rexine 1. If I'm not mistaken, you asked for $147,000, $148,000 of your damages to recover what you were classifying as a preparation expense, which is the plastic, right? Yes, okay, so- So, you injected it, at least for damage purposes, into that first suit. So, this is apples and oranges. Okay, why? In Rexine 1, under Iowa law, we were bringing a breach of warranty claim. And the breach of warranty claim was a claim that the quality of the eggs was below the grade A requirement of the contract. Now, we lost on that, on summary judgment, because Judge Stinson held that there was a kind of a built-in remedy provision, and that we couldn't go outside of that built-in remedy provision. But under Iowa law, on a breach of warranty claim, one of the aspects of damages can be startup costs. So, everything that we did in preparation, everything that Rexine did in preparation for executing under the supply agreement, we included that in our damages, including purchasing a grader. So, that was the acquisition. Now, the damages in Rexine 2 have nothing to do with the acquisition. The damages in Rexine 2 are- so, those are warranty damages which would come under a contract theory. Rexine 2 are tort damages which come under a conversion and a deception theory. So- Can I just ask you- Yes, ma'am. If you get paid the cost of acquiring these plastics as your startup expenses, you had to go out and buy a bunch of stuff. You went out and bought a bunch of stuff. Now, they pay you for it in Rexine 1. I don't see why they have to pay you for it again in Rexine 2. We can't. We lost in Rexine 1. We don't get that. Right. I understand that. But it doesn't mean that the claim for the value of these things wasn't adjudicated in Rexine 1. Yes, you're right. You lost. The court doesn't want to give you these startup expenses for this arrangement for whatever reason. Your Honor, if I can respond to- It sounds like a second bite at the apple. It's actually not a second bite at the apple. One is theoretical as far as part of a breach of contract case that's allowed in Iowa. But this is a tort claim based on the same system. Isn't that exactly what claim splitting is about? That is, I have my contract claim. I have my tort claim. I want to bring those in two different lawsuits. The whole point of the doctrine is to say, no, bring them all at once. Not in Indiana, Your Honor. In Indiana, you can bring separate claims, separate theories, as long as practically the evidence is different. You want to address Hilliard and Erie and our decision in REA against Wabash Valley then? Yes. So, Indiana had an identical evidence test. And the court, Hilliard, which is an Indiana Court of Appeals decision, and then Atkins and Wabash, those decisions are stated the policy that an identical evidence test basically means you would never have claim split. Because how often are you going to have identical evidence? So the court tempered the Indiana identical evidence test to a practical interpretation of identical evidence test. It did not go as far as the same transaction of an occurrence, which with all due respect to the court, I believe what the court was just saying, and to Judge Wood as well, if they can fit in there anywhere, then it's claim split. The language in Hilliard, though, is not all that favorable to you on the point you just made. I mean, it says, therefore, Hilliard. I'm looking at page 1048. The court says, therefore, Hilliard would have been required to assert all the claims involved in her second complaint at the time of her first lawsuit, as they arose out of the same transaction. But that, but, but, but if it. They were available when the first complaint was filed. I mean, they seem to write into the opinion, you know, the test that you're advocating against. As does the Indiana Supreme Court in Erie, where it says multiple legal theories supporting relief on account of one transaction must be litigated at one go. But, but, Your Honor, there has to be an aspect of the identical evidence test. Not if Indiana doesn't want it. I mean, it's the Indiana Supreme Court's job to decide. In Hilliard, on page 1047, it says applying the practical interpretation of the identical evidence test. Now, I understand that judges are applying these tests and they apply them how they see fit. But the reality of it is, if you look at what actually happened here, the evidence that is important to Rexing II is not related to the supply agreement. The supply agreement is under Iowa law. It's a contractual claim. You have a warranty claim and you have a force majeure claim, which gets kicked on summary judgment. It basically then just becomes a collection action. Okay. I mean, I think we have your point. If I could just ask for a moment. I'm sorry. I'm not. Mr. Johnson. Yes, sir. Why should we not treat your approach on appeal to claim splitting as, in essence, accusing the district court of invited error? I look at your brief submitted on summary judgment, and you said, Claim splitting, therefore, applies if the second claim is based on the same transaction or occurrence as the first claim, and there is an identity of parties of their privities, citing Judge Young's opinion in the district court and Telamon Corporation. That's the standard you asked the district judge to apply. You're now arguing on appeal that's the wrong standard. Your Honor, on page eight, we cited to. Yes. On race judicata. On page eight in the race judicata section, we cited to Indianapolis Downs and Richter. Yes. Letting the court know that the proper test is the identical evidence. For claim splitting? For race judicata, but under that standard. If I'm the district judge reading this brief, how do I know that you are trying to argue we should apply identical evidence literally and not the same transaction or occurrence standard, which is what you articulated? It's the same standard. That standard is the same whether it's race judicata or claim splitting, and we argued the identical evidence test. I don't know. I mean, those are two totally different sections of your brief. I agree there are two sections. Right? I mean, page 14 that Judge Hamilton is pointing to is under a claim splitting header. I understand, Your Honor. Thank you. All right. Thank you, Mr. Johnson. Mr. Veenstra. May it please the court, Matt Veenstra for the Epilee Rembrandt Enterprises. I'm just going to skip over the waiver argument. I believe, Your Honor, you're correct that this argument has been waived. They argued for the same transaction or occurrence test below by citing the Telamon case. That's what they are now arguing was legal error. There's no doubt if the same transaction or occurrence test were to be the applicable test that this isn't a very hard case. Well, that's correct, Your Honor. I think that the difference between this practical interpretation of the Indiana test and the federal test is so highly theoretical to be actually metaphysical, and it certainly wouldn't make any difference here anyway. Of course, Illinois did kind of a cleaner thing around 1998. They had been following something more like the same evidence test, and they just said, you know, in Riverside or whatever it was, we are changing to same transaction or occurrence, and Indiana seems to be kind of easing its way away from identical evidence. Well, I think, Your Honor, this court was already there in 1990, and if I were to predict, I think the Indiana state courts are going to get there in short order. Well, but we can't predict when we're sitting in diversity. We have to use the snapshot viewpoint. Yes, Your Honor. So I think this argument has been waived, and I'm just going to assume that the tests are different, and what I'd like to focus is on the merits of the argument, Your Honor. Mr. Meenscher, before you do that, can I just ask you kind of a background question? Yes. It looks to me from the docket in southern Indiana that the final judgment was entered. A verdict came in on the litigation on damages, correct? Yes, Your Honor. Okay. Did the issue of the plastic, all this packaging, did it in any way, shape, or form come up in that damages? At the trial, Your Honor? Yes. No, because we won summary judgment on all of the vaccines claims. No, I know that, but did it come up in the sense of, you know, you asking for X amount and them saying, well, that should be set off by the $150,000? No, Your Honor. It was a straightforward trial on damages. With no argument about mitigation or set off because of plastic? Correct, Your Honor. Okay. So I would like to talk about the application of the identical evidence test, but first I want to note that, in fact, the district court applied the correct standard. It discussed the Telemann decision, the Judge Young district court decision on page 10. A lengthy quote, yes. Then it discussed this court's affirmance of that decision, which did rely on state law, the Hilliard decision specifically, which the Rexings acknowledged in their brief. Then on page 10, Judge Magnus Stinson concluded, reviewing the pleadings, purchase agreement, arguments, and evidence advanced in the cases compels the conclusion that the two cases, now she quoted, center around the same controversy. Your Honor, that's a quote from the Hilliard decision. So, in fact, Your Honor, she discussed those cases. She discussed this court's decision, which discussed the state court cases, and then applied the state court cases. So it's a little bit different. Here's the best I can do for them. If I go out and buy something, let's make it really simple. I go out and buy a fancy vacuum cleaner, and it costs me some money to buy that because you're going to clean my house, and so I give the vacuum cleaner to you to use for cleaning my house. I'm out the money for the vacuum cleaner, and then at the end of our contract, you decide, well, I'm not going to give it back to you, and I either have to go buy a second vacuum cleaner, or I have to rent one, or I have to find a maid service, or I have to do something. So I'm actually suffering the initial damage of having bought the vacuum cleaner that you're now retaining, and I also have this, I'll just call it the rental value claim, and so your refusal to give it back to me is, in some ways, a whole separate act from whether I needed to buy it for you to begin with. Well, Your Honor, if you want to make that decision to invest in the vacuum cleaner, I presume that you have decided that your expectation, your profit is going to make up for that investment. Well, I'm trying to control the cost of your service. I don't want you to have to go and buy the vacuum cleaner. Maybe I have some discount deal through Amazon Prime for vacuum cleaners or something. Going with your hypothetical, Your Honor, if not, what you have is a breach of contract claim because the contract required the Rexians to buy that plastic, and if we didn't give it back, which we did. Eventually, after multiple demands. But they were without the use of it during a period after the contract was over. It was only a one-year contract to begin with, right? It was a one-year contract with the option to extend up to three times, Your Honor. But an unexercised option. So, at best, it's a one-year contract. Obviously, it goes for only eight months, but that's a different thing. I think the heart of the matter, Your Honor, is that the value and the cost of that system were litigated and were injected into the first lawsuit. And it is a second bite at the apple. They would like to sue for what they paid for it in the first time in the first lawsuit. Had they won that claim or had Rembrandt defaulted, then they would like to be able to have the option to bring a second suit for the loss of use of it or the market value at the time of the second lawsuit. Did you say this is an election of remedies sort of problem? You can either get reimbursed for the cost of the vacuum cleaner and now you're not out anything or you can get the rental? Well, I think that we, to reorient back to what they're claiming here, that the heart of their appeal is that under the identical evidence test, it's not the identical evidence, even the practical. No, it isn't because you need rental value. You need all sorts of things that would not be pertinent to the original acquisition price of the plastics. Well, what the Hilliard case says is all that is necessary is that the same general evidence would be used to adjudicate the claims. So what evidence is the same between the two? The value of the plastic system. Well, first of all, Your Honor, the parties agree. I'll direct you to the Rexing brief at page 20. The test for claim splitting is whether the claims could have been brought at the time. That's the car carrier's case at the Rexing brief on page 20. Are there later acquired facts aspect of this? But what about, let's put that to one side. Well, Your Honor, under Indiana law, a conversion claim accrues when the possessor does not relinquish the property after an unqualified demand. It's under the law of bailment. Yes, so that's the THQ Ventures case we cited on page 22 of our brief. And there's no question that the claim had accrued here at the time that they made that two unqualified demands before filing the first lawsuit.  No, the question is, does Indiana require joining both of those claims in one complaint? That's why it's claim splitting and not claim preclusion because, as the district court correctly said, since the first case hadn't been resolved yet, finally, it wasn't a claim preclusion situation. So here are the facts, Your Honor. The dispute between the parties arises exclusively out of the supply of eggs because this plastic was required to be provided under that contract. Twice before filing the suit, they made the demand, then they sued, and they included the costs of that plastic as a category of damages. So, I mean, that is everything at issue in this second suit except, they say, the date when it was returned. However, the date when it was returned is simply irrelevant because the Hilliard case specifically tells a plaintiff you cannot make a tactical decision, which is what my friend just described. See, I thought the cleanest version of your argument was, look, they should have brought the claim. They should have joined the claims. In joining the claims, they should have said, now, damages are a little tricky. We know it's at least $150. We've got to recover what we put into this stuff to buy the plastic, to acquire it. But it's $150 plus our loss of use. We have some consequential damages here. We haven't gotten the things back yet. We've got to tally that. We'll figure out the number in litigation. I think that's the cleanest version of what you're saying. Well, you're right. If that's what they're saying, that would be contrary to Indiana law because. Why? No, no, no. This is a point of the claim needed to be joined even though we're getting a telephone call, it looks like. You are getting a telephone call. Somebody didn't like my question. Judge Hamilton and I are not. And this is not on the cell phones we might have brought in by mistake. No, no, this is actually on the phone. How about I decline it? I'm sorry, Your Honor. No, my only point was that I think you've got a strong argument the claim should have been joined even if damages issues need to sort themselves out on tort damages in litigation. Yes, Your Honor. That's the only point I'm making. Yes, Indiana law is that a tort claim accrues when some ascertainable damage has occurred. And the extent of the damage need not be known. And the question is, as the Rexings say, could the claims have been brought? Well, yes. Not only had the claim accrued legally, they affirmatively knew that they had the claim, believed they had the claim, and chose not to bring it because they wanted to know what the full extent of the damages were, but that's not allowed under Indiana law. Remind me about the timing of the district judge's decision on summary judgment in Rexing I and the filing of Rexing II. I believe it was within days, definitely less than a week, Your Honor. Thanks. Okay. All right. I think that's it. Thank you, Your Honor. Thank you very much, Mr. Veenstra. Mr. Johnson, did he have any more time? You used up your time. If you have one minute, I will give it to you. I'd just like to point out that as Mr. Veenstra said, there is no mention of the plastics in the underlying trial or the issue of the cargo system, which I believe goes to my earlier argument that that issue was not material to the underlying case in any fashion. Well, it was part of the claims that were dismissed on summary judgment, right? Yes, but it was not part of the claims at the actual trial. So what? Because it had been eliminated by summary judgment. Isn't that the purpose of summary judgment? Well, my point is that the claims earlier in the case that were eliminated on summary judgment are totally different than the claims brought in Rexing II because those were claims brought pursuant to a warranty claim. All right. We've had that argument. Okay. Thank you very much. Thanks to both counsel. We'll take the case under advisement.